# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00267-CR

**Gerald Proper, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
## NO. 97643, HONORABLE MICHAEL J. MCCORMICK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Gerald Proper appeals from his conviction for the offense of sexual assault. *See* Tex. Pen. Code Ann. § 22.011 (West 2003). The jury assessed appellant's punishment, enhanced by a prior felony conviction, at imprisonment for life and a fine of $10,000. In his sole point of error, appellant complains that the trial court erred in overruling his motion to dismiss the indictment because of the State's failure to accord him his Sixth Amendment right to a speedy trial. We will affirm the judgment.

In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court announced the factors that are to be considered in determining a claim that the State has violated a defendant's Sixth Amendment right to a speedy trial. The factors to be weighed in the balance include, but are not necessarily limited to: (1) the length of the delay, (2) reason for delay, (3) the defendant's assertion

of his right to a speedy trial, and (4) prejudice to the defendant resulting from the delay. *See id.* at 530; *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003); *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999). The balancing test requires weighing, case by case, the conduct of both the prosecution and the defendant. *See Barker*, 407 U.S. at 530; *Munoz*, 991 S.W.2d at 821. The *Barker* factors must be considered together with such other circumstances as may be relevant. *See Barker*, 407 U.S. at 533; *Munoz*, 991 S.W.2d at 821.

## Length of Delay

The length of delay is measured from the time a defendant is arrested or formally charged. *United States v. Marion*, 404 U.S. 307, 313 (1971). The length of delay is a triggering mechanism; a speedy trial claim need only be considered when the passage of time is unreasonable in the circumstances. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). Delay approaching one year is generally considered so unreasonable as to trigger the *Barker* inquiry. *Id.* at 652 n.1. If the defendant makes a sufficient showing, the court must then consider, as one factor, the extent to which the delay stretches beyond the minimum needed to trigger judicial examination of the claim. *Id.* In this case, there was a delay of approximately thirteen years; this delay is sufficient to trigger a full *Barker* inquiry and a factor to be considered; it weighs in favor of a finding of a violation of appellant's right to a speedy trial. We must consider the other *Barker* factors.

## Reason for Delay

Closely related to length of delay are the reasons the prosecution assigns to justify the delay. *Barker*, 407 U.S. at 531. Different weights should be assigned to different reasons. *Id.* A

2

deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the prosecution. *Id*. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily against the prosecution. *Id*. A valid reason, such as a missing witness, should serve to justify appropriate delay. *Id.*

The indictment was returned on June 29, 1989; it charged appellant with committing the offense of sexual assault on April 16, 1989. Appellant fled from Texas to New York where he was arrested on a fugitive warrant on May 7, 1989. When arrested, appellant was also arrested on a charge that he had committed the offense of rape in New York after he arrived in that state. In November 1989, the governor of New York issued an order pursuant to Texas's request for extradition. In January 1990, an extradition hearing was held in an Ulster County, New York court. Appellant contested his extradition to Texas. In the extradition hearing, the Texas indictment was read to appellant; appellant testified and offered affidavits of his sister, his wife, and his wife's employer. The evidence offered was that in the afternoon of April 15 and the evening of April 17, 1989, appellant was in New York. Based on the evidence appellant presented, the trial court denied extradition and ordered that appellant be held for trial on the New York rape charge. In March 1990, appellant was convicted in New York of the offenses of first degree rape and first degree sodomy and sentenced to serve a prison term of twelve and one-half to twenty-five years. On appeal, the judgments were reversed; appellant was retried, convicted, and sentenced to serve a prison term of seven and one-half to fifteen years. Appellant was released from prison in New York on August 27, 1999. Appellant testified that he returned to Texas two weeks later.

3

After appellant returned to Texas, he allegedly committed another sexual assault on October 30, 1999. He was arrested for that offense, the offense in this case, and for violation of parole relating to a conviction for an offense predating the sexual assault offenses. On November 5, 1999, an attorney was appointed to represent appellant on the sexual assault cases. After several months, at appellant's request, that attorney was replaced by another appointed attorney. However, an attorney was then retained; that attorney represented appellant in the trial of both sexual assault cases. There is evidence that, at appellant's request, this case was reset on numerous occasions and that the State was ready for trial at each setting. With appellant's agreement, or at least his acquiescence, the more recent sexual assault case was tried first. In the trial of that case, the jury was unable to reach a verdict on November 2, 2001. Appellant and the State then agreed upon a preferential setting to try this case on February 25, 2002. However, on January 27, 2002, appellant filed a motion to dismiss the indictment in this case because he had not been given a speedy trial. After an extensive hearing of that motion, it was denied and appellant's trial commenced on the agreed date, February 25, 2002. Appellant was convicted by a jury.

There is no evidence that the State delayed appellant's trial in this case in order to hamper his defense. Appellant fled from Texas immediately after committing this offense and he actively resisted extradition. Appellant committed rape and sodomy in New York and was convicted and imprisoned for those offenses. After returning to Texas, appellant committed and was tried for another sexual assault case. The evidence relating to the reason for delay of appellant's trial in this case was more attributable to appellant's conduct than to the State. The reasons for delay weigh against a finding that appellant was denied a speedy trial.

4

## Appellant's Assertion of his Right
## to a Speedy Trial

A defendant's failure to assert his speedy trial right does not amount to a waiver of that right. *Barker*, 407 U.S. at 528; *Dragoo*, 96 S.W.3d at 314. However, "failure to assert the right will make it difficult for a defendant to prove he was denied a speedy trial." *Barker*, 407 U.S. at 532. The lack of a defendant's timely demand for a speedy trial indicates strongly that he did not really want a speedy trial. *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992). "The longer the delay becomes, the more likely a defendant who wished a speedy trial would be to take some action to obtain it. Thus inaction weighs more heavily against a violation the longer the delay becomes." *Dragoo*, 96 S.W.3d at 314 (quoting 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 23.40 (2d ed. 2001)). "If a defendant makes an affirmative effort to assert his right to a speedy trial only after long delay, this strongly indicates that the defendant did not in fact wish a speedy trial and thus that his right to a speedy trial was not violated." *Id.*; *see Harris*, 827 S.W.2d at 957; *see also Phipps v. State*, 630 S.W.2d 942, 946-47 (Tex. Crim. App. 1982); *Fields v. State*, 627 S.W.2d 714, 721 (Tex. Crim. App. 1982). A motion to dismiss for a violation of the right to a speedy trial is less persuasive than a motion seeking trial without further delay. *Parkerson v. State*, 942 S.W.2d 789, 791 (Tex. App.— Fort Worth 1997, no pet.).

To account for his failing to assert his right to a speedy trial, appellant testified, and now argues, that during the time he was imprisoned in New York he was unaware of the indictment in this case. In view of the evidence that the indictment was read to appellant at the extradition hearing and that he actively resisted extradition, appellant's claim of not having knowledge of the pending indictment is untenable and not credible. Appellant also attempts to excuse his failure to

5

assert his speedy trial right because Texas failed to lodge a detainer against him. Texas and New York are parties to the Interstate Agreement on Detainers Act. *See* Tex. Code Crim. Proc. Ann. art. 51.14 (West 1979).[1]

Appellant has never asked for a speedy trial; but, after thirteen years he demanded that the indictment be dismissed because he had not been given a speedy trial. Appellant actively resisted extradition from New York and succeeded in stopping the State's effort to extradite him. While in prison in New York, appellant did not request that he be returned to Texas for trial. He had that right aside from the Interstate Agreement on Detainers Act. A simple letter directed to the trial court could have required the State to cause him to be returned for trial. *See Smith v. Hooey*, 393 U.S. 374 (1969). Smith, a federal prisoner, mailed a letter to the Texas trial court where an indictment against him was pending requesting a speedy trial. *Id*. at 375. In reply to his letter, Smith was notified that he would be afforded a trial within two weeks of any date he might specify he would be present. *Id*. The Supreme Court held that "[T]he Sixth Amendment right to a speedy trial may not be dispensed

---

[1] At the hearing on appellant's motion to dismiss the indictment, an Ulster County, New York assistant district attorney testified that he remembered appellant and the New York court proceedings. He testified that it was decided not to appeal from the trial court's order refusing to extradite appellant. Also, he testified that New York law would have prevented Texas from gaining custody of appellant even if Texas had placed a detainer on appellant after the extradition process failed. If a detainer had been placed on appellant, he could have demanded a pre-transfer hearing. At that hearing, appellant could have relied upon collateral estoppel on the identity issue decided in his favor at the earlier extradition hearing. Texas heeded this advice and did not lodge a detainer against appellant.

with so lightly . . . . Upon [Smith's] demand, Texas had a constitutional duty to make a diligent, good-faith effort to bring him before the Harris County court for trial." *Id*. at 383.

After appellant returned to Texas, he filed several motions for a continuance and acquiesced in going to trial on a more recently charged sexual assault offense instead of demanding a trial on the indictment in this case. Appellant fled from Texas and successfully resisted extradition; he never demanded a speedy trial; he waited thirteen years and then asked that the indictment be dismissed. In view of the lengthy delay, in which appellant quietly acquiesced, this factor weighs very heavily against finding a violation of the speedy trial right. *See Dragoo*, 96 S.W.3d at 315.

### Prejudice to the Defendant Resulting from Delay

The prejudice suffered by a defendant is assessed in the light of the interests that the speedy trial right is designed to protect. *See Barker*, 407 U.S. at 532; *Emery v. State*, 881 S.W.2d 702, 709 (Tex. Crim. App. 1994); *Rivera v. State*, 990 S.W.2d 882, 891 (Tex. App.—Austin 1999, pet. ref'd). These interests are: (1) preventing pretrial incarceration, (2) minimizing anxiety and concern of the defendant, and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532-33; *Munoz*, 991 S.W.2d at 826. Of these three interests, the most important is the last, because the inability of a defendant adequately to prepare his defense skews the fairness of the entire system. *Barker*, 407 U.S. at 532; *Munoz*, 991 S.W.2d at 822. Initially, a defendant has the burden to make a showing of prejudice although a showing of actual prejudice is not required. *Munoz*, 991 S.W.2d at 826; *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973). Once a defendant makes a prima facie showing of prejudice, the State has the obligation of proving that the defendant suffered no serious prejudice beyond that ensuing from the ordinary and inevitable delay.

7

*Munoz*, 991 S.W.2d at 826; *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973). Lengthy delay may raise a presumption of prejudice. *See Zamorano v. State*, 84 S.W.3d 643, 654 (Tex. Crim. App. 2002). Still, this presumption of prejudice is extenuated by appellant's longtime acquiescence in the delay. *Dragoo*, 96 S.W.3d at 315.

During most of the time in question, appellant was in prison serving time for other unrelated offenses. In these circumstances, we are mainly concerned with whether appellant's ability to defend himself was prejudiced by the delay. *Id.*; *McCarty v. State*, 498 S.W.2d 212, 218 (Tex. Crim. App. 1973). Was appellant's defense in this case prejudiced? A claim of prejudice relying on the inability to locate witnesses must be supported by a showing that the defendant has used due diligence in finding and producing them for trial. *Harris*, 489 S.W.2d at 308. In addition, a defendant must show that the purported witnesses could furnish evidence relevant to his defense. *See id.*

Appellant's claim of prejudice relies principally upon his inability to locate witnesses. Appellant testified that his wife was in Ireland but he could not locate her there. He could not locate his wife's former employer. He testified that his father had died and made no explanation regarding his sister. These are the witnesses who made affidavits furnishing appellant the alibi that resulted in the New York trial judge's refusal to extradite appellant. At his trial, the victim of the offense identified appellant. Also, DNA evidence showed it was appellant who sexually assaulted the alleged victim. In view of this evidence, weak alibi evidence furnished by appellant's witnesses likely would have been more detrimental than helpful to his defense. Appellant also offered evidence that a former employer, who could not at the time of trial remember the facts, could have given testimony at an earlier trial that appellant had access to a company truck and would not have

needed the ride that the victim gave him at the time she was sexually assaulted. Such impeachment evidence on a collateral matter, even if admitted, would have little probative value. The record fails to show that the delay materially prejudiced appellant's defense. The evidence of prejudice suffered by appellant has slight, if any, weight favoring the finding of a violation of appellant's right to a speedy trial.

**Balancing the Factors**

The *Barker* factors are related factors that may be given different weight and they must be considered together with such other circumstances as may be relevant. *Barker*, 407 U.S. at 533. Courts apply a bifurcated standard when reviewing a trial court's ruling on federal constitutional speedy trial claims: an abuse of discretion standard for the factual components, and a *de novo* standard for the legal components. *Zamorano*, 84 S.W.3d at 648; *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). If a defendant loses in the trial court on a speedy trial claim, the appellate court must presume that the trial court resolved any disputed fact issues in the State's favor, and must defer to the implied findings of fact that the record supports. *Zamorano,* 84 S.W.3d at 648; *Munoz*, 991 S.W.2d at 821. Even if it is conceded that the length of delay and the prejudice factors slightly favor a finding of the denial of a speedy trial, the other factors—the reason for delay and appellant's failure to timely assert his right to a speedy trial—weigh heavily against a finding that appellant was denied his constitutional right to a speedy trial. We conclude that appellant was not denied his constitutional right to a speedy trial. Appellant's point of error is overruled.

The judgment is affirmed.

_____

Carl E. F. Dally, Justice

Before Chief Justice Law, Justices Patterson and Dally[*]

Affirmed

Filed:   August 29, 2003

Do Not Publish

---

[*]   Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).