TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00267-CR






Gerald Proper, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 97643, HONORABLE MICHAEL J. MCCORMICK, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



 Appellant Gerald Proper appeals from his conviction for the offense of sexual assault.
See Tex. Pen. Code Ann. § 22.011 (West 2003). The jury assessed appellant's punishment,
enhanced by a prior felony conviction, at imprisonment for life and a fine of $10,000. In his sole
point of error, appellant complains that the trial court erred in overruling his motion to dismiss the
indictment because of the State's failure to accord him his Sixth Amendment right to a speedy trial. 
We will affirm the judgment. 

 In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court announced the factors
that are to be considered in determining a claim that the State has violated a defendant's Sixth
Amendment right to a speedy trial. The factors to be weighed in the balance include, but are not
necessarily limited to: (1) the length of the delay, (2) reason for delay, (3) the defendant's assertion
of his right to a speedy trial, and (4) prejudice to the defendant resulting from the delay. See id. at
530; Dragoo v. State, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003); State v. Munoz, 991 S.W.2d 818,
821 (Tex. Crim. App. 1999). The balancing test requires weighing, case by case, the conduct of both
the prosecution and the defendant. See Barker, 407 U.S. at 530; Munoz, 991 S.W.2d at 821. The
Barker factors must be considered together with such other circumstances as may be relevant. See
Barker, 407 U.S. at 533; Munoz, 991 S.W.2d at 821. 


Length of Delay

 The length of delay is measured from the time a defendant is arrested or formally
charged. United States v. Marion, 404 U.S. 307, 313 (1971). The length of delay is a triggering
mechanism; a speedy trial claim need only be considered when the passage of time is unreasonable
in the circumstances. Doggett v. United States, 505 U.S. 647, 651-52 (1992). Delay approaching
one year is generally considered so unreasonable as to trigger the Barker inquiry. Id. at 652 n.1. If
the defendant makes a sufficient showing, the court must then consider, as one factor, the extent to
which the delay stretches beyond the minimum needed to trigger judicial examination of the claim. 
Id. In this case, there was a delay of approximately thirteen years; this delay is sufficient to trigger
a full Barker inquiry and a factor to be considered; it weighs in favor of a finding of a violation of
appellant's right to a speedy trial. We must consider the other Barker factors. 


Reason for Delay

 Closely related to length of delay are the reasons the prosecution assigns to justify the
delay. Barker, 407 U.S. at 531. Different weights should be assigned to different reasons. Id. A
deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against
the prosecution. Id. A more neutral reason such as negligence or overcrowded courts should be
weighed less heavily against the prosecution. Id. A valid reason, such as a missing witness, should
serve to justify appropriate delay. Id. 

 The indictment was returned on June 29, 1989; it charged appellant with committing
the offense of sexual assault on April 16, 1989. Appellant fled from Texas to New York where he
was arrested on a fugitive warrant on May 7, 1989. When arrested, appellant was also arrested on
a charge that he had committed the offense of rape in New York after he arrived in that state. In
November 1989, the governor of New York issued an order pursuant to Texas's request for
extradition. In January 1990, an extradition hearing was held in an Ulster County, New York court. 
Appellant contested his extradition to Texas. In the extradition hearing, the Texas indictment was
read to appellant; appellant testified and offered affidavits of his sister, his wife, and his wife's
employer. The evidence offered was that in the afternoon of April 15 and the evening of April 17,
1989, appellant was in New York. Based on the evidence appellant presented, the trial court denied
extradition and ordered that appellant be held for trial on the New York rape charge. In March 1990,
appellant was convicted in New York of the offenses of first degree rape and first degree sodomy
and sentenced to serve a prison term of twelve and one-half to twenty-five years. On appeal, the
judgments were reversed; appellant was retried, convicted, and sentenced to serve a prison term of
seven and one-half to fifteen years. Appellant was released from prison in New York on August 27,
1999. Appellant testified that he returned to Texas two weeks later.

 After appellant returned to Texas, he allegedly committed another sexual assault on
October 30, 1999. He was arrested for that offense, the offense in this case, and for violation of
parole relating to a conviction for an offense predating the sexual assault offenses. On November
5, 1999, an attorney was appointed to represent appellant on the sexual assault cases. After several
months, at appellant's request, that attorney was replaced by another appointed attorney. However,
an attorney was then retained; that attorney represented appellant in the trial of both sexual assault
cases. There is evidence that, at appellant's request, this case was reset on numerous occasions and
that the State was ready for trial at each setting. With appellant's agreement, or at least his
acquiescence, the more recent sexual assault case was tried first. In the trial of that case, the jury was
unable to reach a verdict on November 2, 2001. Appellant and the State then agreed upon a
preferential setting to try this case on February 25, 2002. However, on January 27, 2002, appellant
filed a motion to dismiss the indictment in this case because he had not been given a speedy trial. 
After an extensive hearing of that motion, it was denied and appellant's trial commenced on the
agreed date, February 25, 2002. Appellant was convicted by a jury. 

 There is no evidence that the State delayed appellant's trial in this case in order to
hamper his defense. Appellant fled from Texas immediately after committing this offense and he
actively resisted extradition. Appellant committed rape and sodomy in New York and was convicted
and imprisoned for those offenses. After returning to Texas, appellant committed and was tried for
another sexual assault case. The evidence relating to the reason for delay of appellant's trial in this
case was more attributable to appellant's conduct than to the State. The reasons for delay weigh
against a finding that appellant was denied a speedy trial. 

Appellant's Assertion of his Right

to a Speedy Trial

 A defendant's failure to assert his speedy trial right does not amount to a waiver of
that right. Barker, 407 U.S. at 528; Dragoo, 96 S.W.3d at 314. However, "failure to assert the right
will make it difficult for a defendant to prove he was denied a speedy trial." Barker, 407 U.S. at 532. 
The lack of a defendant's timely demand for a speedy trial indicates strongly that he did not really
want a speedy trial. Harris v. State, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992). "The longer the
delay becomes, the more likely a defendant who wished a speedy trial would be to take some action
to obtain it. Thus inaction weighs more heavily against a violation the longer the delay becomes." 
Dragoo, 96 S.W.3d at 314 (quoting 43 George E. Dix & Robert O. Dawson, Texas Practice:
Criminal Practice and Procedure § 23.40 (2d ed. 2001)). "If a defendant makes an affirmative effort
to assert his right to a speedy trial only after long delay, this strongly indicates that the defendant did
not in fact wish a speedy trial and thus that his right to a speedy trial was not violated." Id.; see
Harris, 827 S.W.2d at 957; see also Phipps v. State, 630 S.W.2d 942, 946-47 (Tex. Crim. App.
1982); Fields v. State, 627 S.W.2d 714, 721 (Tex. Crim. App. 1982). A motion to dismiss for a
violation of the right to a speedy trial is less persuasive than a motion seeking trial without further
delay. Parkerson v. State, 942 S.W.2d 789, 791 (Tex. App.-- Fort Worth 1997, no pet.). 

 To account for his failing to assert his right to a speedy trial, appellant testified, and
now argues, that during the time he was imprisoned in New York he was unaware of the indictment
in this case. In view of the evidence that the indictment was read to appellant at the extradition 
hearing and that he actively resisted extradition, appellant's claim of not having knowledge of the 
pending indictment is untenable and not credible. Appellant also attempts to excuse his failure to
assert his speedy trial right because Texas failed to lodge a detainer against him. Texas and New
York are parties to the Interstate Agreement on Detainers Act. See Tex. Code Crim. Proc. Ann. art.
51.14 (West 1979). (1)

 Appellant has never asked for a speedy trial; but, after thirteen years he demanded that
the indictment be dismissed because he had not been given a speedy trial. Appellant actively resisted
extradition from New York and succeeded in stopping the State's effort to extradite him. While in
prison in New York, appellant did not request that he be returned to Texas for trial. He had that right
aside from the Interstate Agreement on Detainers Act. A simple letter directed to the trial court
could have required the State to cause him to be returned for trial. See Smith v. Hooey, 393 U.S. 374
(1969). Smith, a federal prisoner, mailed a letter to the Texas trial court where an indictment against
him was pending requesting a speedy trial. Id. at 375. In reply to his letter, Smith was notified that
he would be afforded a trial within two weeks of any date he might specify he would be present. Id. 
The Supreme Court held that "[T]he Sixth Amendment right to a speedy trial may not be dispensed
with so lightly . . . . Upon [Smith's] demand, Texas had a constitutional duty to make a diligent,
good-faith effort to bring him before the Harris County court for trial." Id. at 383. 

 After appellant returned to Texas, he filed several motions for a continuance and
acquiesced in going to trial on a more recently charged sexual assault offense instead of demanding
a trial on the indictment in this case. Appellant fled from Texas and successfully resisted extradition;
he never demanded a speedy trial; he waited thirteen years and then asked that the indictment be
dismissed. In view of the lengthy delay, in which appellant quietly acquiesced, this factor weighs
very heavily against finding a violation of the speedy trial right. See Dragoo, 96 S.W.3d at 315. 


Prejudice to the Defendant Resulting from Delay

 The prejudice suffered by a defendant is assessed in the light of the interests that the
speedy trial right is designed to protect. See Barker, 407 U.S. at 532; Emery v. State, 881 S.W.2d
702, 709 (Tex. Crim. App. 1994); Rivera v. State, 990 S.W.2d 882, 891 (Tex. App.--Austin 1999, 
pet. ref'd). These interests are: (1) preventing pretrial incarceration, (2) minimizing anxiety and
concern of the defendant, and (3) limiting the possibility that the defense will be impaired. Barker,
407 U.S. at 532-33; Munoz, 991 S.W.2d at 826. Of these three interests, the most important is the
last, because the inability of a defendant adequately to prepare his defense skews the fairness of the
entire system. Barker, 407 U.S. at 532; Munoz, 991 S.W.2d at 822. Initially, a defendant has the
burden to make a showing of prejudice although a showing of actual prejudice is not required. 
Munoz, 991 S.W.2d at 826; Harris v. State, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973). Once a
defendant makes a prima facie showing of prejudice, the State has the obligation of proving that the
defendant suffered no serious prejudice beyond that ensuing from the ordinary and inevitable delay. 
Munoz, 991 S.W.2d at 826; Ex parte McKenzie, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973). 
Lengthy delay may raise a presumption of prejudice. See Zamorano v. State, 84 S.W.3d 643, 654
(Tex. Crim. App. 2002). Still, this presumption of prejudice is extenuated by appellant's longtime
acquiescence in the delay. Dragoo, 96 S.W.3d at 315. 

 During most of the time in question, appellant was in prison serving time for other
unrelated offenses. In these circumstances, we are mainly concerned with whether appellant's ability
to defend himself was prejudiced by the delay. Id.; McCarty v. State, 498 S.W.2d 212, 218 (Tex.
Crim. App. 1973). Was appellant's defense in this case prejudiced? A claim of prejudice relying
on the inability to locate witnesses must be supported by a showing that the defendant has used due
diligence in finding and producing them for trial. Harris, 489 S.W.2d at 308. In addition, a
defendant must show that the purported witnesses could furnish evidence relevant to his defense. 
See id. 

 Appellant's claim of prejudice relies principally upon his inability to locate witnesses. 
Appellant testified that his wife was in Ireland but he could not locate her there. He could not locate
his wife's former employer. He testified that his father had died and made no explanation regarding
his sister. These are the witnesses who made affidavits furnishing appellant the alibi that resulted
in the New York trial judge's refusal to extradite appellant. At his trial, the victim of the offense
identified appellant. Also, DNA evidence showed it was appellant who sexually assaulted the
alleged victim. In view of this evidence, weak alibi evidence furnished by appellant's witnesses
likely would have been more detrimental than helpful to his defense. Appellant also offered
evidence that a former employer, who could not at the time of trial remember the facts, could have
given testimony at an earlier trial that appellant had access to a company truck and would not have
needed the ride that the victim gave him at the time she was sexually assaulted. Such impeachment
evidence on a collateral matter, even if admitted, would have little probative value. The record fails
to show that the delay materially prejudiced appellant's defense. The evidence of prejudice suffered
by appellant has slight, if any, weight favoring the finding of a violation of appellant's right to a
speedy trial. 


Balancing the Factors

 The Barker factors are related factors that may be given different weight and they
must be considered together with such other circumstances as may be relevant. Barker, 407 U.S. at
533. Courts apply a bifurcated standard when reviewing a trial court's ruling on federal
constitutional speedy trial claims: an abuse of discretion standard for the factual components, and
a de novo standard for the legal components. Zamorano, 84 S.W.3d at 648; Johnson v. State, 954
S.W.2d 770, 771 (Tex. Crim. App. 1997). If a defendant loses in the trial court on a speedy trial
claim, the appellate court must presume that the trial court resolved any disputed fact issues in the
State's favor, and must defer to the implied findings of fact that the record supports. Zamorano, 84
S.W.3d at 648; Munoz, 991 S.W.2d at 821. Even if it is conceeded that the length of delay and the
prejudice factors slightly favor a finding of the denial of a speedy trial, the other factors--the reason
for delay and appellant's failure to timely assert his right to a speedy trial--weigh heavily against
a finding that appellant was denied his constitutional right to a speedy trial. We conclude that
appellant was not denied his constitutional right to a speedy trial. Appellant's point of error is
overruled.

 The judgment is affirmed.



 __________________________________________

 Carl E. F. Dally, Justice

Before Chief Justice Law, Justices Patterson and Dally*

Affirmed

Filed: August 29, 2003

Do Not Publish





















* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1.   At the hearing on appellant's motion to dismiss the indictment, an Ulster County, New
York assistant district attorney testified that he remembered appellant and the New York court
proceedings. He testified that it was decided not to appeal from the trial court's order refusing to
extradite appellant. Also, he testified that New York law would have prevented Texas from gaining
custody of appellant even if Texas had placed a detainer on appellant after the extradition process
failed. If a detainer had been placed on appellant, he could have demanded a pre-transfer hearing. 
At that hearing, appellant could have relied upon collateral estoppel on the identity issue decided in
his favor at the earlier extradition hearing. Texas heeded this advice and did not lodge a detainer
against appellant.