**AFFIRMED; Opinion Filed March 7, 2019**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00358-CR

**THE STATE OF TEXAS, Appellant**
**V.**
**FRANCISCO NIETO JR., Appellee**

**On Appeal from the 216th Judical District Court**
**Gillespie County, Texas**
**Trial Court Cause No. 6649**

## MEMORANDUM OPINION

Before Justices Bridges, Partida-Kipness, and Carlyle
Opinion by Justice Carlyle

In a single issue, the State of Texas appeals the trial court's order granting Francisco Nieto Jr.'s motion to set aside an indictment against him based on violation of his constitutional right to a speedy trial.[1] We affirm.

### I. FACTUAL AND PROCEDURAL CONTEXT

The charged offense in this case, felony driving while intoxicated, was allegedly committed by Nieto on July 27, 2013. He was arrested on that date. After spending approximately one week in jail, he was released on bond.

---

[1] This appeal was originally filed in the Fourth Court of Appeals of Texas in San Antonio. It was transferred to this Court by the Texas Supreme Court pursuant to a March 17, 2018 docket equalization order. *See* TEX. GOV'T CODE ANN. § 73.001.

More than two years and eight months later, on April 14, 2016, Nieto was indicted for that offense in trial court cause number 5952. On August 17, 2016, Nieto filed a "Motion to Dismiss Prosecution with Prejudice for Lack of a Speedy Trial" (the "2016 motion to dismiss"). In that motion, he complained of the State's (1) failure to comply with provisions of the Texas Code of Criminal Procedure requiring a timely indictment and (2) violation of his speedy trial right under the Sixth Amendment to the United States Constitution. That motion was set for a September 15, 2016 hearing.

During the next several months, Nieto's counsel requested and was granted two continuances based on counsel's unavailability. Also, (1) at a September 19, 2016 hearing, counsel for Nieto stated that he and the State had "agreed to reset" to resolve a discovery matter, and (2) at a March 8, 2017 hearing, counsel for Nieto requested and was granted a continuance based on his motion to withdraw as retained counsel and be designated as Nieto's appointed counsel. Nieto's 2016 motion to dismiss was heard on May 4, 2017, and cause number 5952 was dismissed without prejudice on that date.

The State filed a notice of appeal to the Fourth Court of Appeals in San Antonio and obtained a stay of all trial court proceedings pending disposition of that appeal. In an October 11, 2017 order, the court of appeals dismissed that appeal as untimely filed.[2]

Despite the May 4, 2017 dismissal order, the State filed an October 24, 2017 motion to dismiss the indictment in cause number 5952 because "the Court of Appeals has dismissed the appeal and . . . the case will be re-presented to the grand jury for consideration, and in the interest of justice." The State did not obtain the judge's signature on the order granting this "motion to

---

[2] Prior to dismissing the appeal, the court of appeals issued an August 29, 2017 order in which it directed the State to show cause why the appeal should not be dismissed and stated in part,

> The order from which the State attempts to appeal was signed on May 4, 2017. Therefore, the State's notice of appeal was due to be filed on May 24, 2017, twenty days from the date the order was signed. *See* TEX. R. APP. P. 26.2(b). However, the State did not file its notice of appeal until May 26, 2017. Moreover, the State did not timely file a motion to extend time to file the notice of appeal, which would have been due on June 8, 2017.

dismiss" until November 21, 2017. On December 6, 2017, a grand jury indicted Nieto for the same offense in trial court cause number 6649.

On January 24, 2018, Nieto filed a "Motion to Set Aside Indictment for Failure to Afford Constitutional Right to Speedy Trial" in cause number 6649 (the "2018 motion to dismiss"). In that motion, Nieto again complained of violation of his speedy trial right under the Sixth Amendment. Also, he stated in part "[t]here are no satisfactory reasons for the over four and a half year delay in bringing [him] to trial" and he "has been substantially prejudiced in that his ability to present his defense has been impaired and because of the prolonged anxiety and concern he has suffered." The State filed a response to that motion in which it argued in part (1) the length of the delay in this case is "2½ years" and "weighs in favor of [Nieto]," but not "heavily"; (2) Nieto requested "multiple continuances" and "never sought a speedy trial, but rather only a dismissal of the charges"; and (3) Nieto "was not in custody, and offered no evidence of any prejudice."

At the March 7, 2018 hearing on Nieto's 2018 motion to dismiss, the State introduced into evidence a September 14, 2013 report respecting analysis of a blood sample taken from Nieto at the time of his arrest. Nieto testified in part that he is diabetic. Also, he stated he does not "remember this case" "as well as when it happened" and has been "worried and stressed about this case." During closing, counsel for Nieto argued in part (1) because more than two years passed before Nieto was first indicted, he "lost the opportunity to retest that blood before he had a lawyer," and (2) because the blood sample has been "fermenting" since 2013, Nieto "can't retest it" and "can't explore the possibility that the results are affected by the diabetes."

The trial court granted Nieto's 2018 motion to dismiss and dismissed the case with prejudice. The State timely appealed.

## II. VIOLATION OF RIGHT TO SPEEDY TRIAL

The Sixth Amendment to the U.S. Constitution guarantees the accused in a criminal prosecution the right to a speedy trial. *See* U.S. CONST. amend. VI. The right to a speedy trial attaches once a person is either arrested or charged. *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008). A speedy trial claim is analyzed on a case-by-case basis by weighing and balancing the following factors: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice inflicted on the defendant by the delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). These "are related factors, which must be considered together along with any other relevant circumstances." *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (citing *Barker*, 407 U.S. at 533). "No one factor possesses 'talismanic qualities,' thus courts must 'engage in a difficult and sensitive balancing process' in each individual case." *Id*. (quoting *Barker*, 407 U.S. at 533).

If the delay in question is unreasonable enough to be presumptively prejudicial, the first factor is satisfied and analysis of the remaining three factors is triggered. *Cantu*, 253 S.W.3d at 281 (citing *Zamorano*, 84 S.W.3d at 648). The State must satisfy its burden of justifying the length of the delay while the defendant must meet his burden of proving the assertion of the right and showing prejudice. *Id*. at 280. The State's reason for the delay serves to determine how heavily the length of the delay should weigh against the State. *Zamorano*, 84 S.W.3d at 649. The defendant's burden of proof varies inversely to the State's degree of culpability for the delay. *Cantu*, 253 S.W.3d at 280. In other words, "the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id*. at 280–81.

We apply a bifurcated standard of review to a trial court's ruling on a speedy trial claim. *Id*. at 282. The factual components are reviewed for an abuse of discretion, while the legal

components are reviewed de novo. *Id*. Review of the individual *Barker* factors necessarily involves factual determinations and legal conclusions, but the balancing test as a whole is "a purely legal question." *Id*. With regard to the trial court's determination of factual issues, we view all the evidence in the light most favorable to the trial court's ruling. *Id*.

In its sole issue on appeal, the State contends the trial court erred by granting Nieto's 2018 motion to dismiss because "[t]he delay of 992 days between arrest and indictment is not so long as to violate the Appellee's speedy trial rights, especially when it is balanced against the Appellee's failure to request a speedy trial, multiple requests for continuances, and very little demonstrated prejudice."

*A. Length of Delay*

The first *Barker* factor involves a double inquiry: "A court must consider whether the delay is sufficiently long to even trigger a further analysis under the *Barker* factors, and if it is, then the court must consider to what extent it stretches beyond this triggering length." *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017). That second inquiry is significant to the speedy trial analysis because "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Zamorano*, 84 S.W.3d at 649. "Thus, any speedy trial analysis depends first upon whether the delay is more than 'ordinary'; if so, the longer the delay beyond that which is ordinary, the more prejudicial that delay is to the defendant." *Id*. "In general, courts deem delay approaching one year to be unreasonable enough to trigger the *Barker* enquiry." *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). The length of delay is measured from the time the defendant is arrested or formally accused, whichever occurs first. *Id*.

In *Zamorano*, the court of criminal appeals stated that a delay of two years and ten months between the defendant's arrest and the hearing on his speedy trial motion in a DWI case was "sufficiently lengthy" to trigger an analysis of the other *Barker* factors. *Zamorano*, 84 S.W.3d at

643. Further, in that same case, that court stated a "nearly four-year delay" between the defendant's arrest and his plea hearing "stretched well beyond the bare minimum needed to trigger judicial examination of the claim" and therefore the first *Barker* factor weighed "heavily against the State" in that case. *Id.*

In its appellate brief, the State describes the length of the delay in this case as "992 days between the date of arrest and the date of the first indictment." By contrast, Nieto asserts "the relevant delay is 4 years and 8 months." Regardless, the delay of "992 days," or more than two years and eight months, between Nieto's DWI arrest and the first indictment was "sufficiently lengthy" to trigger an analysis of the other *Barker* factors. *See Zamorano*, 84 S.W.3d at 643.

Further, after the dismissal without prejudice in cause number 5952, Nieto was not indicted again until December 6, 2017, seven months after that dismissal and more than four years and four months after his arrest. The State argues that a portion of the delay complained of by Nieto was due to continuances requested by him that resulted in his trial being continued from September 2016 to May 2017. But even excluding the eight-month period from September 2016 to May 2017, the length of the delay between Nieto's arrest and his second indictment is more than three and one-half years. We conclude the relevant delay in this case "stretched well beyond the bare minimum needed to trigger judicial examination of the claim" and therefore the first *Barker* factor weighs "heavily against the State." *See id.* ("nearly four-year" time period that defendant's case "lingered on the docket" was relevant in determining weight of first *Barker* factor).

### B. Reason for Delay

The State carries the burden of justifying its delay. *See Cantu*, 253 S.W.3d at 280. In assessing the reason for the more-than-three-and-one-half-year delay described above, we are instructed to assign different weights to different reasons. *See Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016) (citing *Dragoo*, 96 S.W.3d at 314). "In the absence of an assigned

reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Id*. Between diligent prosecution and bad-faith delay is the middle ground of official negligence in bringing an accused to trial. *Doggett v. U.S.*, 505 U.S. 647, 656–57 (1992). Such negligence is weighed more lightly than a deliberate intent to harm the accused's defense. *Id*. at 657. Courts' tolerance of such negligence "varies inversely with its protractedness and its consequent threat to the fairness of the accused's trial." *Id*.

The State offered no excuse or explanation for the delay between Nieto's arrest and the first indictment. This was negligent. Further, an additional seven months of delay was due to the State pursuing an appeal it filed untimely and then abandoned. The Fourth Court of Appeals' August 29, 2017 order shows the State failed to timely request an extension by June 8, 2017. Worse, the State failed to respond to our sister court's order to show cause why the appeal should not be dismissed for untimeliness. Instead the State did nothing, allowing seven months to pass. Our sister court dismissed the appeal on October 11, 2017. Based on the State's official negligence—a lack of explanation for the two-year-and-eight-month portion of the delay between Nieto's arrest and his first indictment—and the negligence as to another seven-month portion of the complained-of delay while the State failed to prosecute its appeal, "this factor, too, weighs in favor of finding a violation of the speedy trial right," though not heavily. *Dragoo*, 96 S.W.3d at 314.

### C. Assertion of Right

Filing a motion to dismiss instead of a motion for a speedy trial will generally weaken a speedy trial claim because it shows a desire to have no trial instead of a speedy one. *Cantu*, 253 S.W.3d at 283 (citing *Zamorano*, 84 S.W.3d at 651 n.40). However, seeking only dismissal will not necessarily result in a waiver of the claim. *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim.

App. 1983). "In some cases, defense counsel may legitimately feel that a long delay has caused a client so much prejudice that dismissal is warranted, even if the State is belatedly ready to move promptly." *Id*. "Each case must turn on its own facts, and the particular relief a defendant seeks is but one fact to consider." *Id*.

The State asserts Nieto "never filed a motion for speedy trial, but instead actively sought multiple motions for continuance and obtained them." Nieto responds that at the time he filed his motions to dismiss, "his defense had been sufficiently prejudiced . . . that seeking a dismissal became his only option." Also, he asserts the continuances in question should not "count against his speedy trial claim" because counsel's unavailability was not Nieto's fault and the fourth continuance was for the purpose of designating Nieto's retained counsel as appointed counsel.

The fact that Nieto did not request a speedy trial as an alternative to his motion to dismiss does not automatically eliminate his claim. *See Phillips*, 650 S.W.2d at 401; *State v. Tatom*, No. 05-14-01246-CR, 2015 WL 4931445, at *6 (Tex. App.—Dallas Aug. 18, 2015, no pet.) (mem. op., not designated for publication). But Nieto's claim is attenuated by his lack of request that a speedy trial be conducted and by his motions for continuance. *See Tatom*, 2015 WL 4931445, at *6; *Hurdsman v. State*, No. 02-17-00319-CR, 2018 WL 5832116, at *5 (Tex. App.—Fort Worth Nov. 8, 2018, no pet.) (mem. op., not designated for publication); *State v. Smith*, No. 06-12-00174-CR, 2013 WL 624126, at *4 (Tex. App.—Texarkana Feb. 20, 2013, no pet.) (mem. op., not designated for publication). We conclude this factor "weighs against" Nieto, but not heavily. *See Tatom*, 2015 WL 4931445, at *6; *Hurdsman*, 2018 WL 5832116, at *5 (concluding third *Barker* factor "weighs against" defendant who requested and was granted continuance, then moved for dismissal without asking that speedy trial be conducted); *Smith*, 2013 WL 624126, at *4 & n.9 (continuance and request for dismissal without asking for trial "weigh[ed] against" defendant, but not "heavily").

*D. Prejudice*

When a court analyzes *Barker*'s prejudice factor, it must do so in light of the defendant's interests that the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired. *See Dragoo*, 96 S.W.3d at 315 (citing *Barker*, 407 U.S. at 532). Of these forms of prejudice, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* (quoting *Barker*, 407 U.S. at 532). The defendant has the burden to make some showing of prejudice, although a showing of actual prejudice is not required. *State v. Munoz*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999). When the defendant makes a prima facie showing of prejudice, the burden shifts to the State to show that the defendant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Id.* (quoting *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)); *see Anderson v. State*, No. 05-17-00933-CR, 2018 WL 3238011, at *5 (Tex. App.—Dallas Jul. 3, 2018, no pet.) (mem. op., not designated for publication).

The State contends Nieto "demonstrated some slight prejudice with regard to the second type of prejudice that courts examine in these situations," but "the first and third types of prejudice are absent." Nieto asserts he "spent a week in jail and far longer living under strict bond conditions, suffered serious anxiety, concern, and health problems during this time, no longer remembers the events nearly as well as he had previously, and no longer has the ability to retest the blood evidence in his case."

As described above, Nieto was incarcerated for one week immediately following his arrest. The timing of that incarceration demonstrates it was not due to a lack of a speedy trial. Further, although Nieto testified he has been "worried and stressed about this case," generalized anxiety, alone, is not sufficient to establish prejudice. *See Cantu*, 253 S.W.3d at 286. But additionally, the

record shows Nieto's diminished memory and the loss of the opportunity to retest Nieto's blood sample. The lost opportunity to retest blood evidence in a DWI case demonstrates a possibility of impairment of Nieto's defense, which relied—at least in part—on his diabetes. *See State v. Smith*, 66 S.W.3d 483, 492 (Tex. App.—Tyler 2001, no pet.) (fourth *Barker* factor weighed in favor of defendant in DWI case where delay resulted in dimming of memories and loss of videotape that could demonstrate effect of defendant's consumption of alcohol). The State did not rebut this claim by evidence or argument at either hearing on Nieto's motions to dismiss. On this record, we conclude the prejudice factor weighs in Nieto's favor. *See id.*; *see also Zamorano*, 84 S.W.3d at 655 ("Even if appellant's actual prejudice was minimal, '[c]ondoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority.'").

*E. Balancing the Factors*

Having addressed the four *Barker* factors, we now "engage in a difficult and sensitive balancing process." *Zamorano*, 84 S.W.3d at 648. Weighing heavily against the State is the lengthy and unexplained post-arrest, pre-case-initiation delay of more than two years and eight months. The lack of reason for this delay, which is State negligence, also weighs against it. The additional seven-month delay, caused by the State untimely noting an appeal and then sitting mute, even ignoring an order to show cause, weighs heavily against the State. The assertion-of-the-right factor weighs against Nieto. And finally, prejudice weighs in Nieto's favor. Thus, only one of the four factors weighs against Nieto and the other three tip the balance in his favor, including at least one factor that weighs "heavily" in his favor. Like the trial court, we conclude the *Barker* factors predominate in favor of Nieto. *See Barker*, 407 U.S. at 533. Therefore, the trial court did not err by granting Nieto's 2018 motion to dismiss based on violation of his right to a speedy trial.

## III. CONCLUSION

We affirm the trial court's order.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
180358F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-18-00358-CR          V.

FRANCISCO NIETO JR., Appellee

On Appeal from the 216th Judical District
Court, Gillespie County, Texas
Trial Court Cause No. 6649.
Opinion delivered by Justice Carlyle.
Justices Bridges and Partida-Kipness
participating.


Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 7th day of March, 2019.